PENNSYLVANIA STEEL CO. v. NEW YORK CITY RY. CO.

CENTRAL TRUST CO. v. THIRD AVE. RY. CO.

(Circuit Court, S. D. New York.    October 28, 1908.)

Memorandum for Counsel.
See, also, 161 Fed. 784, 786, 787.

---

PENNSYLVANIA STEEL CO. v. NEW YORK CITY RY. CO.    MORTON TRUST CO. v. METROPOLITAN ST. RY. CO. (two cases).
GUARANTY TRUST CO. v. SAME.

(Circuit Court, S. D. New York.    November 16, 1908.)

RECEIVERS (§ 118*)—ADMINISTRATION OF PROPERTY—RECEIVERS' CERTIFICATES—PURPOSE OF ISSUE—REPAIRS.

Receivers for a street railroad company who have been authorized to issue receivers' certificates for betterment and equipment purposes which are made a lien on the property superior to the mortgages may properly use proceeds of such certificates in making repairs on the roadbed of a leased line where it is an essential part of the system, and the lease, which it is the purpose of the receivers and the court to continue, requires the lessee to make repairs, and such repairs are essential to the maintenance of efficient service and the protection of the rolling stock from excessive wear and injury.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 206; Dec. Dig. § 118.*]

In Equity.    On application for leave to expend proceeds of receivers' certificates in repairing roadbed in Madison avenue.
See, also, 161 Fed. 787.

---

* For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Byrne & Cutcheon, for Pennsylvania Steel Co.

Masten & Nichols, for receivers of Metropolitan St. Ry. Co.

Dexter, Osborn & Flemming, for receivers of New York City Ry. Co.

Bronson Winthrop, for Morton Trust Co.

Davies, Stone & Auerbach, for Guaranty Trust Co.

LACOMBE, Circuit Judge. It is true that the Fourth and Madison is a leased line, but it is a leased line which is an essential element of the system, being the sole connection with the main entrance to Grand Central Station, and apparently profitable. There is nothing to indicate that the receivers should elect to give up this contract, and this application must be decided on the assumption that it will be beneficial for the system as a whole to operate under the lease. But if the lease is to continue, its covenants must be fulfilled and the road be kept in repair; otherwise there will be a breach for which the lease may be terminated. That the road is in a condition of great disrepair is manifest and not disputed. Efficient public service cannot be maintained without extensive repairs. Moreover, upon this line are run the new P. A. Y. E. cars, in which from insurance moneys and proceeds of receivers' certificates there is invested over $1,000,000. This rolling stock is exposed to much more rapid deterioration by being run over a road in such a wretched condition. It certainly seems a most shortsighted policy to expose this valuable property in which so much money is already invested to such adverse conditions of operation, which may be eliminated by putting the tracks in decent condition. As to the suggestion that these new cars may be shifted elsewhere, it is sufficient to say that by reason of their abnormal size they cannot run on the tracks of any other line until the radii of all curves on that line are lengthened, the cost of which would be very heavy and practically wasted. Furthermore, it must not be overlooked that the public is entitled to consideration, not only the traveling public, but those whose houses abut on the line; they are entitled to insist that the company, or its receivers, who run cars on this line, whether it be leased or owned, shall keep it in repair. The situation presents sharply the question: Shall this leased road be run or abandoned? and, since there is nothing to justify its abandonment, those who run it must pay for its immediate repair, and there is no money to pay for that except the proceeds of the certificates.